Ryan G. Weldon
Cory R. Laird
Riley W. Wavra
LAIRD COWLEY, PLLC
2315 McDonald Avenue, Suite 220
Missoula, MT 59801
P.O. Box 4066
Missoula, MT 59806-4066
Telephone:  (406) 541-7400
Facsimile:  (406) 541-7414
Email:      rweldon@lairdcowley.com
            claird@lairdcowley.com
            rwavra@lairdcowley.com

Attorneys for Yellow Dog Flyfishing, L.L.C.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| YELLOW DOG FLYFISHING, L.L.C., | Cause No. <u>CV-25-15-BU-TJC</u> |
| Plaintiff, | |
| vs. | COMPLAINT AND DEMAND FOR TRIAL BY JURY |
| YELLOW DOG SUPPLY COMPANY, LLC, D/B/A YELLOW DOG TACKLE SUPPLY, | |
| Defendant. | |

Plaintiff Yellow Dog Flyfishing L.L.C. (Plaintiff or "Yellow Dog

Flyfishing") hereby brings the present action against Defendant Yellow Dog

Supply Company, LLC, d/b/a Yellow Dog Tackle Supply Company (Defendant or

"Yellow Dog Tackle Supply"), and in support thereof, respectfully shows the Court as follows:

## INTRODUCTION

1.    This is an action for unfair competition under Section 43(a) of the Lanham Trademark Act for Defendant's infringement of Plaintiff's unregistered word and logo marks and for partial cancellation of Defendant's trademark registrations for retail store services featuring fishing and tackle products and supplies.

2.    Plaintiff Yellow Dog Flyfishing is a premier flyfishing travel outfitter and fishing gear retailer.  For more than 25 years, Yellow Dog Flyfishing has consistently used the word mark "YELLOW DOG FLYFISHING" and the stylized Yellow Dog Flyfishing and design logo mark (collectively, the "Yellow Dog Flyfishing Marks") in interstate commerce, and more particularly in the fishing industry, to identify, advertise, and promote its flyfishing goods and services throughout the United States.  Plaintiff has come to be widely regarded as one of the most trusted names in high-end flyfishing travel and as a premier retail seller of flyfishing equipment, apparel, and accessories.  As a result of Plaintiff's widespread, continuous, and exclusive use of its Yellow Dog Flyfishing Marks in commerce to create an association of common ownership, source, affiliation,

sponsorship, or approval by Plaintiff, Plaintiff owns valid and subsisting common law trademark rights in each of the Yellow Dog Flyfishing Marks.

3.      Plaintiff's stylized Yellow Dog Flyfishing design logo features a stylized dog's head shown in profile, facing to the right, and rendered in a high-contrast black-and-white design.  The mark also includes the words "Yellow Dog Flyfishing" with "Yellow" and "Dog" displayed in larger uppercase letters on top of the dog head design and "Flyfishing" displayed below.  Plaintiff's stylized Yellow Dog Flyfishing and design logo is shown below at Inset 1:

Inset 1



4.      In late 2023, Defendant Yellow Dog Tackle Supply began using confusingly similar word and logo marks to advertise and promote a newly created business operating in the fishing industry.  Defendant's word and logo marks include the word mark YELLOW DOG TACKLE SUPPLY and the stylized and design logo mark (collectively, the "Yellow Dog Tackle Supply Marks") shown below at Inset 2:

Inset 2



5.     Defendant's use of its Yellow Dog Tackle Supply Marks in the

fishing business is causing a likelihood of confusion because customers viewing

the Defendant's marks would probably assume that Defendant's products are

associated with Plaintiff, thereby harming consumers and causing injury to

Yellow Dog Flyfishing.  Indeed, actual confusion exists: Yellow Dog Flyfishing

has received calls reflecting actual confusion.

## PARTIES

6.     Plaintiff is a limited liability company organized and existing under

the laws of Montana with its principal place of business in Bozeman, Montana.

7.     Upon information and belief, Defendant is a limited liability company

organized and existing under the laws of Texas, with its principal place of business

in Chico, Texas.  Defendant may be served via its registered agent, Neil Richey,

691 N. Davis St, Chico, TX. 76431.

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction over this case and has

original subject matter jurisdiction pursuant to 15 U.S.C. § 1125(a) and 28 U.S.C.

§§ 1332, 1338(a), (b).

9.     This Court also has supplemental jurisdiction over Plaintiff's

cancellation claim pursuant to 28 U.S.C. § 1367(a) because it is so related to the

Lanham Act claim as to form part of the same case or controversy under Article III

of the United States Constitution.

10.     Defendant has sufficient contacts with this State and district such that

this Court's exercise of personal jurisdiction over Defendant comports with

traditional notions of fair play and substantial justice.  For instance, Defendant, in

its regular course of business, sold physical products via an interactive website and

caused those products to be delivered to Montana, such that Defendant

purposefully directed its conduct at Montana, and Plaintiffs claims arise out of and

are related to such conduct.  *See Herbal Brands, Inc. v. Photoplaza, Inc.,* 72 F.4th

1085, 1988 (9th Cir. 2023); Mont. R. Civ. P. 4(b)(1).

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

# FACTUAL BACKGROUND

## A. Plaintiff

### i. Plaintiff's Founding, Growth, and Substantial Investment in its Yellow Dog Flyfishing Brand

12.     In 2000, Jim Klug founded Yellow Dog Flyfishing in Bozeman, Montana, where the company has been located ever since.  As will be explained in greater detail, Klug began the company as a one-person operation and, through creativity, hard work, the delivery of the highest quality services and products, and significant investment in marketing, grew the company into one of the most recognized, respected, and valuable enterprises in the fishing industry in general and in the flyfishing industry in particular.  Yellow Dog Flyfishing now regularly employs 45 to 50 people and annually serves thousands of customers throughout the United States and beyond.

13.     When founding Yellow Dog Flyfishing, Klug set out to build a unique, experience-based fishing travel company that delivered premier experiences to its customers.  This included creating trademarks closely associated with that level of service.

14.     As he was forming the company, Klug hired a graphic design firm to create a unique logo based on a photograph of Klug's yellow Labrador Retriever, Bo.  The result was the logo shown on page 3, above.  Yellow Dog Flyfishing has

consistently used its word mark YELLOW DOG FLYFISHING and its logo since the company's founding in 2000.[1]

15.     Klug then built the company's website, www.yellowdogflyfishing.com.  The company has maintained that same web address ever since, and although the website has evolved over time, it always has prominently featured the word mark and original Labrador dog head logo created in 2000.  So have the tens of thousands of promotional goods and written materials the company has had manufactured, or has itself authored, and then distributed throughout its 26-year history.

16.     Yellow Dog Flyfishing's original business focus was selling travel to special fishing destinations.  Klug produced quality experiences for the company's customers and promoted the Yellow Dog Flyfishing brand.  He steadily grew the business and, within a few years, was able to begin hiring employees.

17.     Intending from the outset to create a nationally known and valued business, Klug traveled throughout the United States promoting the company.  At first, it was Klug traveling alone.  As the company grew, employees shouldered a share of the load.  At significant expense, they exhibited numerous times every year at consumer trade shows held throughout the country, prominently displaying the word mark and logo, as photos reprinted below at Insets 3 and 4 demonstrate.

---

[1] In 2025, the company dropped the word "Adventures" from its name and logo.

Inset 3



Inset 4



18.     In addition to exhibiting at consumer trade shows, Yellow Dog

Flyfishing, since its founding, has promoted its word and logo marks by regularly

sending employees to meetings of fishing clubs and other angler-focused

gatherings throughout the United States, where Yellow Dog Flyfishing personnel

give presentations and promote the company's expertise and offerings.  Since the

company's founding, Yellow Dog Flyfishing representatives have exhibited at

consumer shows and have given presentations to angling associations hundreds of

times and in at least thirty-five different states.

19.    Also since its founding, Yellow Dog Flyfishing has advanced its word

and logo marks by creating, printing, and mailing brochures and extensive catalogs

featuring its offerings, all of which prominently display the Labrador dog head

logo, as is shown in the cover images of an early brochure and of a more

contemporary catalog, reprinted below at Inset 5.

Inset 5

 

20.    Each year, Yellow Dog Flyfishing now mails its catalogs to more than

10,000 customers located throughout the United States and distributes an

approximately equal number of catalogs to potential customers at consumer trade shows held throughout the United States.

21.    The company has invested in brand growth and recognition even beyond what is discussed above.  For example, in 2013 Yellow Dog Flyfishing began advertising in highly regarded, nationally distributed fishing magazines and other publications.  And, in 2019, Klug began writing, recording, and producing a fishing-focused podcast that prominently features and is sponsored by Yellow Dog Flyfishing.  The podcast has successfully helped to advance the brand's recognition and reputation nationwide; episodes of the podcast have been downloaded nearly a quarter million times, and by listeners in all fifty states.

22.    Plaintiff has acquired and now enjoys substantial goodwill and a valuable reputation under Plaintiff's Yellow Dog Flyfishing Marks.  Yellow Dog Flyfishing's substantial investment in marketing and its commitment to the quality of the product and services with which its brand is associated with has caused the Yellow Dog Flyfishing Marks to be recognized and valued by anglers throughout the United States.  Indeed, by 2022 Yellow Dog Flyfishing was serving nearly 5,000 traveling anglers annually and, long before that, had a loyal customer base with customers from all 50 states.  Plaintiff's Yellow Dog Flyfishing Marks have become well known within the trade and among the relevant consuming public.

ii.     **Yellow Dog Flyfishing Expands its Offerings to Include the Retail Selling of Fishing Clothing, Gear, and Equipment, and Builds a Nationwide Customer Base in the Retail Market**

23.     In 2003, Yellow Dog Flyfishing began to offer customers more than fishing travel.  It began selling physical products used by anglers under and in connection with the Yellow Dog Flyfishing Marks.  For example, Plaintiff began selling goods such as fishing hats, fishing shirts, sun protection garments, and various fishing accessories at trade shows and similar events.  In 2014, Plaintiff began selling these goods on its website as well.

24.     Since 2003, the company has continuously offered for sale and has sold various retail products under and in connection with the Yellow Dog Flyfishing Marks.

25.     In 2019, in response to customer demand, Yellow Dog Flyfishing began implementing plans to expand the retail fishing product sales portion of its business.  In 2022, after significant investigation into options and much groundwork, the company consummated the purchase of a brick-and-mortar flyfishing retail store in Bozeman, Montana, that also had an established interactive website through which it sold fishing tackle and other fishing products to consumers.  Yellow Dog Flyfishing immediately rebranded the physical store and the interactive website under the Yellow Dog Flyfishing name and logo.

26.    The company thus carried and sold, both in person and through an interactive website, a full range of flyfishing equipment, from hard goods like rods and reels, to soft goods like fishing waders and apparel, to an extensive line of flies and fly-tying materials, as well as numerous fishing accessories and other items of fishing tackle.

27.    The company immediately invested heavily in an advertising campaign designed to promote, on a nationwide basis, the company's expanded retail product offerings.  For example, the company placed advertisements in nationally distributed fishing magazines, sponsored numerous angler-focused gatherings throughout the country where it touted its retail expansion, advertised the expansion on its podcast, and conducted an extensive social media and direct marketing campaign reaching tens of thousands of customers and potential customers in all fifty states.

28.    Further, since 2014, Yellow Dog Flyfishing has maintained an active, dedicated YouTube channel.  In 2022, the company expanded its investment in promoting the Yellow Dog Flyfishing brand through that medium.  The company constructed a state-of-the-art video recording studio in Bozeman, and began writing, filming, producing, and posting product review and product promotion videos to its dedicated Yellow Dog Flyfishing YouTube channel.  That effort has

been successful.  To date, the company's YouTube channel has generated more than 1.9 million views.[2]

29.     The company also began expanding its on-line commerce system in 2022 by investing a substantial sum to design and implement a highly effective e-commerce platform on its www.yellowdogflyfishing.com website to improve the customer experience and increase on-line retail sales of the broad line of fishing products it offers.

30.     These investments quickly resulted in additional sales of retail products and fishing trips, due in large part to the already existing nationwide strength of the Yellow Dog Flyfishing brand.

31.     Almost immediately after expanding its retail offerings and upgrading its e-commerce platform, the company began averaging more than 11,000 branded Google searches per month initiated by customers and prospective customers seeking to transact business with the company or seeking information about the company.  This volume of branded Google searches is comparable to that enjoyed by the most successful and well-established retail product sellers in the industry, such as Orvis Fly Fishing and Sage.  As a result, customers from virtually all states

---

[2] This figure includes not only product review and product promotion videos, but also videos and films the company made to spotlight special fishing destinations and to provide fishing instruction.

had purchased retail fishing products from Yellow Dog Flyfishing through its improved interactive website by the first half of 2023.

32.    The success of Yellow Dog Flyfishing's retail operations has been so profound that customers now routinely rely on the company's retail offerings not simply on a stand-alone basis, but also to prepare for their fishing travel adventures with gear curated by Yellow Dog Flyfishing's personnel.  This synergy between the company's travel and retail offerings has made Yellow Dog Flyfishing's retail operations an essential component of the company's business.

## B. Defendant's Unfair Competition and Infringement of Yellow Dog Flyfishing's Trademarks

33.    On information and belief, Defendant originally operated retail store services featuring products and supplies for use in the oil and gas industry.

34.    On information and belief, in November of 2023, Defendant began operating retail store services featuring fishing and tackle products and supplies. Defendant did so adopting as a d/b/a Yellow Dog Tackle Supply and using the dog head logo shown on page 4, above, in connection with its fishing business, thus beginning infringing on Yellow Dog Flyfishing's trademarks.  Plaintiff did not learn of Defendant's infringing activities until late 2025, when instances of actual confusion began to surface.

35.    Defendant Yellow Dog Tackle Supply prominently features its version of the Labrador dog head logo on its interactive website,

www.yellowdogtacklesupply.com.  It also features the logo on an extensive number of products it sells through that website, including fishing shirts, hats, and numerous fishing tackle components and accessories.

36.    Defendant's website is so similar to Plaintiff Yellow Dog Flyfishing's website that it appears to have been deliberately created to falsely pass Defendant off as a Yellow Dog Flyfishing affiliate.  On its website, Defendant: employs the words "Yellow Dog" as its primary brand identifier; prominently features a logo that is patently similar to Yellow Dog Flyfishing's Labrador dog head logo; uses the same color schemes Yellow Dog Flyfishing has used on its website for decades; uses the same or nearly the same typography that Yellow Dog Flyfishing has used on its website since the website's earliest days; and employs a website layout, structure, and navigation that is so similar to what Yellow Dog Flyfishing's website uses that it appears to be copied from that site.

37.    A screenshot of Plaintiff's website home page, captured February 2, 2026, is printed below at Inset 6, and a screenshot of Defendant's website home page, also captured February 2, 2026, is reprinted below at Inset 7.

Inset 6



Inset 7



38.     Notably, in the website it maintains for its oil and gas business,

www.yellowdogsupplyco.com, Defendant does not use color schemes, typography,

layout, structure, or navigation mirroring those used by Plaintiff; it does so only on

its fishing business website.  A screenshot of Defendant's oil and gas business

website's homepage (captured February 4, 2026) is reprinted at Inset 8, below.

Inset 8



39.    Another notable difference exists between Defendant's fishing

business website and its oil and gas business website.  On its fishing business

website (and on logoed products offered on the website), Defendant enlarges its

logo's words "YELLOW DOG," just as Plaintiff has always done with its logo.

Defendant, however, does not enlarge those words on its oil and gas business

website's logo.

40.    In addition to the above, and as further evidence of Defendant's

attempt to pass itself off as a Yellow Dog Flyfishing affiliate, Defendant, on its

fishing business website, has copied Yellow Dog Flyfishing's practice of grafting a

Santa hat onto its website's dog head logo during the holiday season, as Insets 9 and 10, below, show.  Inset 9 is a screenshot from Plaintiff's website as it existed in December 2024.  Inset 10 is a screenshot from Defendant's fishing business website as it existed on December 29, 2025.[3]

Inset 9



---

[3] A 501(c)(3) non-profit called The Internet Archive has been creating a searchable archive of the internet for nearly 30 years.  Through that archive, one can view websites as they existed in the past.

Inset 10



41.     Upon information and belief and based upon a search of The Internet Archive discussed in note 3, above, Defendant has not used the Santa hat on the website it maintains for its oil and gas business; it has done so only for its fishing business website.

42.     Because Plaintiff's website prominently states that Plaintiff is a Montana company operating in Montana, and because Defendant clearly viewed Plaintiff's website when designing its own and when crafting its marks for use in its fishing business, Defendant knew its actions were likely to cause harm in Montana.

43.     Although Yellow Dog Flyfishing primarily caters to anglers who use flyfishing tackle, and Defendant Yellow Dog Tackle Supply primarily caters to

anglers who fish with conventional tackle, the two companies share overlapping

customer bases, as many anglers fish with both conventional rods and flyrods.

Further, both companies carry many of the same brands of fishing tackle and

fishing clothing, and they both sell many identical products desired and used by fly

anglers and conventional anglers alike.[4]  Thus, Defendant offers services that are

identical to the services previously offered by Plaintiff.

44.    Defendant's use of its Yellow Dog Tackle Supply Marks is

confusingly similar to Plaintiff's Yellow Dog Flyfishing Marks in sound,

appearance, and overall commercial impression.  The marks are confusingly

similar in that both marks include the same distinct term "Yellow Dog."

Furthermore, the identical term "Yellow Dog" is also the dominant and first

portion of each of the marks.  As such, Defendant's Yellow Dog Tackle Supply

mark and Plaintiff's Yellow Dog Flyfishing Marks are partially identical in

appearance and sound.

45.    Moreover, although the Yellow Dog Flyfishing Marks and brand is

well-known nationwide, Plaintiff Yellow Dog Flyfishing is particularly well-

---

[4] Conventional fishing and flyfishing are both rod and reel fishing methods.
Conventional anglers and fly anglers largely fish for the same species and they
largely fish in the same bodies of water.  Indeed, many anglers use both
conventional tackle and fly tackle on the same fishing trip. The main difference in
the two methods is in the way conventional rods and flyrods are cast.  Those
differences necessitate variation in the design of the reels and lines, and they allow
for differences in the terminal tackle (lures versus flies).  But a great deal of fishing
gear and apparel is used by both types of anglers.

known and valued in Texas, where Defendant is headquartered.  Over the last five

years, more of Yellow Dog Flyfishing's travel customers have been from Texas

than from any other state, and the Yellow Dog Flyfishing podcast discussed in

paragraph 21, above, has been downloaded by more listeners in Texas than in any

other state.  Further, before Defendant began operating in the fishing industry,

Texas ranked in the top three states for Yellow Dog Flyfishing customer count in

both the travel and the product sales segments of the company's business.

## COUNT I

## UNFAIR COMPETITION TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1125

46.    Plaintiff incorporates the foregoing allegations of paragraphs 1-45 as

if fully set forth here.

47.    Defendant's conduct as alleged herein constitutes federal trademark

infringement and unfair competition under Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a).

48.    Plaintiff's long-term and substantial investment of time and money in

developing the goodwill associated with its business has created very strong word

and logo marks that substantially predate Defendant's entry into the fishing

industry under the Yellow Dog Tackle Supply Marks.  Defendant's oil business is

remote from, and unrelated to, its sales of fishing equipment.

49.    Plaintiff has valid and protectable trademarks, including its distinctive Labrador dog head logo and the word mark Yellow Dog Flyfishing.

50.    Defendant, like Plaintiff, uses its interactive website to sell, offer for sale, advertise, and distribute fishing tackle and other fishing related products under the infringing marks in this district and elsewhere in the United States. These products are sold to the same class of consumers.  Many are not particularly expensive, and consumers familiar with Plaintiff's Yellow Dog Flyfishing Marks, and its many years of exclusive use in the fishing industry, might not exercise much care in purchasing a product from Defendant.

51.    The similarities between Defendant's and Plaintiff's names, logos, and websites, as discussed above, create a likelihood that consumers will believe the two companies are affiliated, commonly owned, endorsed, or otherwise connected—particularly in online search results, social media, and digital advertising contexts.

52.    Defendant's use of its marks and its other conduct discussed above has been and is without the license, consent, or authorization of Yellow Dog Flyfishing.

53.    Defendant's use of its marks in its fishing business is causing confusion in the marketplace and will continue to do so, thereby harming

consumers and causing actual damage to Plaintiff, as well as diminishing Yellow Dog Flyfishing's brand equity, reputation, and goodwill.

54.     Consumers have been and are likely to mistakenly believe that Defendant's products bearing its marks are manufactured by, sponsored by, authorized by, approved by, or otherwise affiliated with Yellow Dog Flyfishing when, in fact, they are not.

55.     Defendant's actions, as discussed above, are likely to divert consumers seeking fishing tackle, clothing, and accessories from Yellow Dog Flyfishing to Defendant, and those consumers are likely to be misled about the nature, characteristics, quality, or source of Defendant's products.

56.     Defendant's conduct alleged above has proximately caused, and will continue to cause, Plaintiff to suffer damages in the form of diverted sales, lost profits, and other damages to be proven at the trial of this matter.

## COUNT II

### CANCELLATION OF U.S. REGISTRATION NO. 7798215
### 15 U.S.C. § 1119

57.     Plaintiff incorporates the foregoing allegations of paragraphs 1-56 as if fully set forth here.

58.     Pursuant to 15 U.S.C. § 1119, this Court has the authority to determine the right to registration and to order the cancellation of trademark registrations.

59.    Defendant is the registrant of U.S. Trademark Registration No. 7798215 for the mark YELLOW DOG (the "'215 Registration"), covering "Retail store services featuring fishing and tackle products and supplies" in class 35.

60.    The '215 Registration was improperly granted because the mark YELLOW DOG so resembles Plaintiff's Yellow Dog Flyfishing Marks as to be likely to cause confusion, mistake, or deception among relevant consumers as to the source, sponsorship, or affiliation of Defendant's retail services, in violation of 15 U.S.C. § 1052(d).

61.    Plaintiff's rights in the Yellow Dog Flyfishing Marks predate Defendant's claimed use and registration of mark YELLOW DOG in the '215 Registration.

62.    Defendant's use and registration of the YELLOW DOG mark has caused, and continues to cause, actual confusion and a likelihood of confusion in the marketplace, resulting in damage to Plaintiff's goodwill, reputation, and brand.

63.    Because the YELLOW DOG mark is confusingly similar to Plaintiff's Yellow Dog Flyfishing Marks and was registered despite Plaintiff's prior rights, the '215 Registration for retail store services featuring fishing and tackle products and supplies in class 35 is invalid and subject to cancellation by the Director of the USPTO.

## COUNT III

## CANCELLATION OF U.S. REGISTRATION NO. 7798216
## 15 U.S.C. § 1119

64.    Plaintiff incorporates the foregoing allegations of paragraphs 1-63 as if fully set forth here.

65.    Pursuant to 15 U.S.C. § 1119, this Court has the authority to determine the right to registration and to order the cancellation of trademark registrations.

66.    Defendant is the registrant of U.S. Trademark Registration No.

7798216 (the "'216 Registration") for the design mark  (the "Dog Logo"), covering "Retail store services featuring products and supplies for use in the oil and gas industry; Retail store services featuring fishing and tackle products and supplies" in class 35.

67.    The '216 Registration was improperly granted because the Dog Logo so resembles Plaintiff's stylized Yellow Dog Flyfishing design logo so as to be likely to cause confusion, mistake, or deception among relevant consumers as to the source, sponsorship, or affiliation of Defendant's goods or services, in violation of 15 U.S.C. § 1052(d).

68.    Plaintiff's rights in the stylized Yellow Dog Flyfishing design logo predate Defendant's claimed use and registration of the Dog Logo in the '216 Registration.

69.    Defendant's use and registration of the Dog Logo has caused, and continues to cause, actual confusion and a likelihood of confusion in the marketplace, resulting in damage to Plaintiff's goodwill, reputation, and brand.

70.    Because the Dog Logo is confusingly similar to Plaintiff's stylized Yellow Dog Flyfishing design logo and was registered despite Plaintiff's prior rights, the '216 Registration for retail store services featuring fishing and tackle products and supplies in class 35 is invalid and subject to cancellation by the Director of the USPTO.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that:

1.    The Court declare that Defendant infringes upon Plaintiff's trademarks;

2.    The Court order the Director of the USPTO to partially cancel U.S. Registration Nos. 7798215 and 7798216 previously granted to Defendant with respect to retail store services featuring fishing and tackle products and supplies registered in Class 35;

3.     The Court order the Defendant to transfer the yellowdogtacklesupply.com domain name to Plaintiff;

4.     The Court award damages to Plaintiff in an amount to be determined by the jury;

5.     The Court enter a permanent injunction against Defendant, its officers, directors, principals, agents, servants, affiliates, employees, attorneys, representatives, successors and assigns, and all those in privy or acting in concert or participation with it, prohibiting Defendant from engaging in infringement of Plaintiff's word mark or logo, by using the word mark or logo discussed above, or any other word mark or logo confusingly similar thereto in connection with its fishing business;

6.     The Court tax the costs of this action, including attorney's fees if they be allowable, against Defendant;

7.     The Court enter such other and further relief in favor of Plaintiff as may be just, equitable, and proper.

DATED this 19th day of February, 2026.

LAIRD COWLEY, PLLC


By:   /s/ Riley M. Wavra
         Riley M. Wavra
         Attorney for Yellow Dog Flyfishing, LLC

## DEMAND FOR TRIAL BY JURY

Yellow Dog Flyfishing, LLC, hereby demands a jury trial on all issues so triable.

DATED this 19th day of February, 2026.

LAIRD COWLEY, PLLC

By:   /s/ Riley M. Wavra
    Riley M. Wavra
    Attorney for Yellow Dog Flyfishing, LLC